IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOYCE THOMAS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 12-171 |
| ) | Judge Donetta W. Ambrose |
| MICHAEL J. ASTRUE, ) | Magistrate Judge Lisa Pupo Lenihan |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

# REPORT AND RECOMMENDATION

**I.   Recommendation**

Plaintiff Joyce Thomas ("Thomas") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("Act") [42 U.S.C. §§ 401-433, 1381-1383f]. The matter is presently before the Court on cross-motions for summary judgment filed by the parties pursuant to Federal Rule of Civil Procedure 56. ECF Nos. 10 & 13. For the reasons that follow, it is respectfully recommended that Thomas' motion for summary judgment (*ECF No. 10*) be denied, that the Commissioner's motion for summary judgment (*ECF No. 13*) be granted, and that the Commissioner's decision be affirmed.

**II.   Report**

   **A.   Procedural History**

1

Thomas protectively applied for benefits under Title II on June 11, 2008, alleging that she had become "disabled" on February 15, 2008. R. at 9, 118, 154. Pennsylvania's Bureau of Disability Determination denied the application on August 20, 2008. R. at 66. Thomas responded on September 2, 2008, by filing a timely request for an administrative hearing. R. at 71-72. She applied for SSI benefits on January 31, 2009. R. at 9, 30, 126. On September 11, 2009, a hearing was held in Johnstown, Pennsylvania, before Administrative Law Judge ("ALJ") Charles Pankow. R. at 28. Thomas, who was represented by counsel, appeared and testified at the hearing. R. at 33-56. Eugene Czuczman ("Czuczman"), an impartial vocational expert, also testified at the hearing. R. at 56-60. In a decision dated December 9, 2009, the ALJ determined that Thomas was not "disabled" within the meaning of the Act. R. at 6-23.

On January 25, 2010, Thomas sought administrative review of the ALJ's decision by filing a request for review with the Appeals Council. R. at 5. The Appeals Council denied the request for review on December 12, 2011, thereby making the ALJ's decision the "final decision" of the Commissioner in this case. R. at 1. Thomas commenced this action on February 10, 2012, seeking judicial review of the Commissioner's decision. ECF Nos. 1 & 3. Thomas and the Commissioner filed motions for summary judgment on June 18, 2012, and August 16, 2012, respectively. ECF Nos. 10 & 13. These motions are the subject of this report and recommendation, which is being filed pursuant to 28 U.S.C. § 636(b)(1)(C).

**B.** <u>**Standard of Review**</u>

This Court's review is plenary with respect to all questions of law. *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46

(3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process by stating as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted). Factual findings pertaining to all steps of the sequential evaluation process are subject

to judicial review under the "substantial evidence" standard. *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 360-361 (3d Cir. 2004).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision. *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D.Pa. 2005).

**C.**     **The ALJ's Decision**

In his decision, the ALJ determined that Thomas had not engaged in substantial gainful activity subsequent to her alleged onset date. R. at 11. Thomas was found to be suffering from chronic obstructive pulmonary disease ("COPD"), residuals of a lung resection, depression, anxiety, a personality disorder, a multinodular goiter, irritable bowel syndrome, sleep apnea, gastroesophageal reflux disease ("GERD"), neurodermatitis, hypertension, rheumatic heart disease, nodules on her lungs and pancreas, a cyst on her toe, a lump behind her right knee, and a nodule on her vocal cords. R. at 11-12. Her COPD, residuals of a lung resection, depression,

anxiety and personality disorder were deemed to be "severe" under the Commissioner's regulations. R. at 11; 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c). The ALJ concluded that Thomas' impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. at 13-18.

In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ assessed Thomas' "residual functional capacity"[1] as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the exertional demands of light work, with certain modifications. Under light work restrictions, she cannot lift more than twenty pounds, can customarily not stand or walk more than six of eight hours a workday, and can customarily not sit more than two of eight hours a workday (20 CFR 404.1567, 416.967, and Social Security Rulings 83-10, 96-8p). The claimant can engage in some use of arm and leg controls, use arm and hand actions, perform some finger actions, and occasionally stoop (20 CFR 404.1567, 416.967, and Social Security Rulings 83-10, 96-8p). Additionally, the claimant can have no more than moderate exposure to noxious fumes and gases. She is limited to simple, routine, repetitive, low stress tasks. She can have no more than minimal contact with the public. She is limited to occasional interaction with supervisors and coworkers.

R. at 18. Thomas had "past relevant work"[2] experience as a cashier, a switchboard operator, a sales clerk, and an administrative assistant. R. at 57-58. In response to a hypothetical question describing an individual with the limitations contained in the ALJ's residual functional capacity assessment, Czuczman testified that the described individual could not perform the duties of Thomas' prior jobs. R. at 58-59. Therefore, it was determined that Thomas could not return to her past relevant work. R. at 21.

---

[1] The term "residual functional capacity" is defined as "that which an individual is still able to do despite the limitations caused by his or her impairments." *Hartranft v. Apfel*, 181 F.3d 358, 359, n. 1 (3d Cir. 1999)(parentheses omitted), citing 20 C.F.R. § 404.1545(a). The same residual functional capacity assessment is used at the fourth and fifth steps of the sequential evaluation process. 20 C.F.R. §§ 404.1545(a)(5)(i)-(ii), 416.945(a)(5)(i)-(ii).

[2] "Past relevant work" is defined as "substantial gainful activity" performed by a claimant within the last fifteen years that lasted long enough for him or her to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). The Commissioner has promulgated comprehensive regulations governing the determination as to whether a claimant's work activity constitutes "substantial gainful activity." 20 C.F.R. §§ 404.1571-404.1576, 416.971-416.976.

Thomas was born on April 27, 1955, making her fifty-two years old on her alleged onset date and fifty-four years old on the date of the ALJ's decision. R. at 21, 33. She was classified as a "[p]erson closely approaching advanced age" under the Commissioner's regulations. 20 C.F.R. §§ 404.1563(d), 416.963(d). She had a high school education and an ability to communicate in English. R. at 21, 33, 158, 166; 20 C.F.R. §§ 404.1564(b)(4)-(5), 416.964(b)(4)-(5). Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Thomas could work as an assembler, a folding machine operator, or a price marker. R. at 22. Czuczman's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).[3] R. at 59.

**D.     Discussion**

Thomas worked as an administrative assistant during the nine years preceding her alleged onset date of February 15, 2008. R. at 160, 190. Czuczman testified that similar positions customarily entailed "skilled"[4] work at the "sedentary"[5] level of exertion, but that Thomas' work had been performed at the "medium"[6] level of exertion. R. at 57-58. Dr. Rajkumar Sarma, a treating psychiatrist, reported on March 3, 2008, that Thomas was on medical leave from work because of her "many issues." R. at 329. Thomas apparently told Dr. Sarma that she would be

---

[3] At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy." *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003). This burden is commonly satisfied by means of vocational expert testimony. *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005).
[4] "Skilled work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced. Skilled work may require laying out work, estimating quality, determining the suitability and needed quantities of materials, making precise measurements, reading blueprints or other specifications, or making necessary computations or mechanical adjustments to control or regulate the work. Other skilled jobs may require dealing with people, facts, or figures or abstract ideas at a high level of complexity." 20 C.F.R. §§ 404.1568(c), 416.968(c).
[5] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).
[6] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

7

"going back to work soon." R. at 330. Shortly thereafter, Thomas returned to work. R. at 34. She stopped working on June 1, 2008, due to her medical condition. R. at 159. The ALJ treated Thomas' intervening work activity as an "unsuccessful work attempt." R. at 11; 20 C.F.R. §§ 404.1574(a)(1), 416.967(a)(1).

Dr. Roberta Miller, Thomas' primary care physician, reported on July 28, 2008, that Thomas was physically capable of performing any work activities that did not involve exposure to poor ventilation. R. at 354-355. Thomas' need to avoid environments with poor ventilation was attributed to her COPD. R. at 355. No other limitations were identified by Dr. Miller. R. at 354-355. The ALJ acknowledged the effects of Thomas' COPD by limiting her to jobs requiring "no more than moderate exposure to noxious fumes and gases." R. at 18, 21.

Dr. Abu N. Ali, a non-examining medical consultant, opined on August 15, 2008, that Thomas was physically capable of performing a range of "light"[7] work activities that did not involve concentrated exposure to temperature extremes, wetness, humidity, fumes, odors, dusts, gases, or poor ventilation. R. at 399-405. The ALJ found Dr. Ali's assessment to be "worthy of significant probative weight." R. at 21. For this reason, Thomas was deemed to be limited to "light" work even though no exertional limitations had been found by Dr. Miller. R. at 18, 354-355.

In her brief, Thomas appears to challenge only the ALJ's assessment of her mental limitations. ECF No. 11 at 4-6. She does not question his evaluation of her physical limitations. At the hearing, Thomas testified that she could not work because of nervousness and "crying." R. at 46. She complained of an inability to concentrate and a need to read instructions "over and

---

[7] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

8

over and over again." R. at 46. When asked whether she had additional health problems limiting her ability to work, Thomas responded in the negative. R. at 46. Consequently, the analysis in this case need only concern the limitations attributable to Thomas' mental impairments.

Kathleen Verrengia ("Verrengia"), a treating mental health therapist, completed a "medical source statement" detailing Thomas' mental limitations on July 24, 2008. R. at 339-341. Verrengia indicated that Thomas had "extreme" limitations in her abilities to understand and remember detailed instructions and respond appropriately to work pressures in a usual work setting. R. at 340. Thomas was deemed to have "marked" limitations in her abilities to carry out short, simple instructions, carry out detailed instructions, make judgments concerning simple work-related decisions, respond appropriately to changes in a routine work setting, and interact appropriately with supervisors, co-workers, and members of the general public. R. at 340. Verrengia asserted that Thomas had a "moderate" limitation in her ability to understand and remember short, simple instructions. R. at 340.

Dr. Phyllis Brentzel, a non-examining psychological consultant, opined on August 13, 2008, that Thomas was "able to meet the basic mental demands of competitive work on a sustained basis." R. at 384. In the narrative portion of her assessment, Dr. Brentzel stated as follows:

> The claimant's basic memory processes are intact. She can make simple decisions. She is able to carry out very short and simple instructions. She is able to maintain concentration and attention for extended periods of time. Moreover, she would be able to maintain regular attendance and be punctual. She would not require special supervision in order to sustain a work routine. Her impulse control is adequate. She is able to interact appropriately with the general public. Her ADL's and social skills are functional from a psychiatric standpoint. She is self-sufficient. Furthermore, she can function in production oriented jobs requiring little independent decision making. There are no restrictions in her abilities in regards to understanding and memory.

9

R. at 384.  Dr. Brentzel found Thomas' subjective complaints to be only "partially credible."  R. at 384.

Verrengia completed a second assessment form on September 11, 2008.  R. at 219-221, 410-412.  She stated that Thomas had a "poor" ability to follow work rules, relate to co-workers, deal with members of the general public, use judgment, interact with supervisors, deal with work stress, maintain attention and concentration, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability.  R. at 219-220, 410-411.  Verrengia further reported that Thomas had a "fair" ability to function independently, maintain her personal appearance, and understand, remember and carry out job instructions.  R. at 219-220, 410-411.  On September 12, 2008, Dr. Miller asserted that Thomas had no work capacity.  R. at 218.  Dr. Miller attributed Thomas' work-related difficulties to "severe anxiety."  R. at 218.

Dr. Joel Last performed a consultative psychological evaluation of Thomas on October 15, 2009.  R. at 455-458.  In the narrative portion of his examination report, Dr. Last stated that Thomas would experience difficulties in a work setting "due to poor focus and concentration."  R. at 456.  He assigned her a Global Assessment of Functioning ("GAF") rating of forty-five.[8]  R. at 456.  In the portion of his report detailing Thomas' abilities and limitations on a function-by-function basis, Dr. Last reported that Thomas had "moderate" limitations in her abilities to carry out detailed instructions, make judgments concerning simple work-related decisions, respond appropriately to work pressures in a usual work setting, respond appropriately to changes in a routine work setting, and interact appropriately with supervisors and co-workers.  R.

---

[8] "The Global Assessment of Functioning ('GAF') scale, designed by the American Psychiatric Association, ranges from zero to one hundred and assesses a person's [level of] psychological, social and occupational function[ing]." *Taliaferro v. Astrue*, 788 F.Supp.2d 412, 414, n. 2 (W.D.Pa. 2011).  A GAF score falling between forty-one and fifty is *sometimes* indicative of an individual exhibiting "serious impairment in social, occupational, or school functioning."  American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders*, ("DSM-IV-TR")(4th ed. 2000), at 34.  An individual with a GAF score in this range *may* be "unable to keep a job." *Id.*

10

at 457. Thomas was deemed to have only "slight" limitations in her abilities to understand and remember detailed instructions and interact appropriately with members of the general public. R. at 457. Her ability to understand, remember and carry out short, simple instructions was deemed to be unlimited. R. at 457. No "marked" or "extreme" limitations were identified. R. at 457.

At the hearing, Czuczman testified that a typical employer would discharge an employee who needed to miss more than two days of work per month, or who was regularly "off task" for more than ten percent of a standard workday.[9] R. at 60. Since the ALJ did not believe that Thomas' impairments would cause her to miss work on a frequent basis or remain "off task" for extended periods of time, he did not view this portion of Czuczman's testimony to be dispositive. R. at 22. The crux of Thomas' argument is that the ALJ erred in failing to account for her inability to maintain the "concentration and pace" typically expected of a full-time employee. ECF No. 11 at 6.

The ALJ accorded "little weight" to the opinions of disability provided by Dr. Miller and Verrengia. R. at 17, 21. He gave "great weight" to Dr. Last's examination report. R. at 17. In addition, the ALJ found Dr. Brentzel's assessment to be "worthy of significant probative weight." R. at 21. Thomas faults the ALJ for failing to afford significant weight to the assessments supplied by Verrengia. ECF No. 11 at 5-6. She maintains that Verrengia's opinion was "consistent with" the findings of Dr. Last's evaluation. *Id.* at 5.

To the extent that a conflict existed between the assessments provided by Verrengia and Dr. Last, it was within the ALJ's discretion to credit the opinion of Dr. Last over that of

---

[9] The inquiry required under the Social Security Act does not account for any "reasonable accommodations" mandated by Title I of the Americans with Disabilities Act of 1990 [42 U.S.C. §§ 12111-12117]. *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 803, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999); *Poulos v. Commissioner of Social Security*, 474 F.3d 88, 95 (3d Cir. 2007).

Verrengia. *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 505 (3d Cir. 2009)("In evaluating medical reports, the ALJ is free to choose the medical opinion of one doctor over that of another."). The resolution of such evidentiary conflicts is the primary function of an administrative law judge. *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985). A treating source's opinion declaring a claimant to be "disabled" does not inevitably control the adjudicatory process. *Adorno*, 40 F.3d at 47-48 (recognizing that "a statement by a treating physician supporting an assertion that [a claimant] is 'disabled' or 'unable to work' is not dispositive of the issue"). In certain instances, assessments submitted by examining and non-examining sources may be sufficiently probative of a claimant's ability to work to outweigh contrary assessments provided by his or her treating sources. *Brown v. Astrue*, 649 F.3d 193, 196-197 (3d Cir. 2011); *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991). That principle applies with special force in this case, since Verrengia did not qualify as an "acceptable medical source"[10] under the Commissioner's regulations. 20 C.F.R. §§ 404.1513(a), 416.913(a). The reports supplied by Dr. Brentzel and Dr. Last provided the ALJ with an adequate basis for discounting the disabling limitations identified by Verrengia. *Chandler v. Commissioner of Social Security*, 667 F.3d 356, 361-362 (3d Cir. 2011).

In some respects, Thomas appears to rely on Dr. Last's examination report in support of her motion for summary judgment. ECF No. 11 at 5-6. Admittedly, Dr. Last made some observations that would appear to favor Thomas' position. He stated that "poor focus and concentration" would cause her to experience difficulties in a work setting. R. at 456. In addition, Dr. Last gave Thomas a GAF score of 45. R. at 456. When viewed in relation to his

---

[10] Although an individual must qualify as an "acceptable medical source" to confirm the existence of a medically determinable impairment, information provided by "other sources" may be used to determine the extent to which an established impairment limits a claimant's ability to engage in work-related activities. 20 C.F.R. §§ 404.1513(a), (d), 416.913(a), (d).

function-by-function assessment, however, Dr. Last's examination report is consistent with the factual findings supporting the ALJ's decision.

Dr. Last indicated that Thomas' "poor concentration" did not limit her ability to understand, remember and carry out short, simple instructions. R. at 457. He found only a "moderate" limitation in Thomas' ability to make judgments concerning simple work-related decisions. R. at 457. The ALJ's residual functional capacity assessment reflected an individual who could perform only "simple" tasks. R. at 18. It is worth noting that Dr. Last found Thomas to be only "slightly" limited in her ability to understand and remember *detailed* instructions, and only "moderately" limited in her ability to carry out *detailed* instructions. R. at 457. The jobs identified by Czuczman would not entail the performance detailed tasks. R. at 58-59. Furthermore, Dr. Last deemed Thomas to be only "moderately" limited in her abilities to respond appropriately to work pressures in a usual work setting, respond appropriately to changes in a routine work setting, and interact appropriately with supervisors and co-workers. R. at 457. The ALJ accounted for these limitations by restricting Thomas to "routine, repetitive, low stress tasks" involving only "occasional interaction" with supervisors and co-workers. R. at 18. Dr. Last found Thomas to be "slightly" limited in her ability to interact appropriately with members of the general public. R. at 457. The ALJ addressed that concern by eliminating jobs involving "more than minimal" public contact. R. at 18. In these respects, the ALJ's residual functional capacity finding was *more restrictive* than the assessment provided by Dr. Last.

Thomas claims that the ALJ's decision is "devoid of any limitations regarding [her] concentration and pace." ECF No. 11 at 6. That contention cannot be reconciled with the ALJ's conscious decision to accommodate all of the specific limitations that Dr. Last had attributed to Thomas' "poor concentration." R. at 457. In any event, the ALJ's hypothetical question to

Czuczman was even more descriptive than the residual functional capacity finding contained in his decision. R. at 18, 58. At the hearing, the ALJ described an individual who could not satisfy "quota-based production standards or fast-paced standards." R. at 58. The jobs identified by Czuczman in response to the ALJ's hypothetical question were the same jobs later relied upon by the ALJ in determining that Thomas was not "disabled." R. at 22, 58-59. Because the ALJ's hypothetical question accurately conveyed Thomas' mental limitations to Czuczman, the subsequent omission of some limitations from the residual functional capacity finding was inconsequential. *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005)(explaining that a remand is not required where the record conclusively establishes that further proceedings "would not affect the outcome of the case").

Dr. Last's assignment of a low GAF score to Thomas did not undermine the probative value of his assessment. R. at 456. No direct correlation exists between a claimant's GAF score and his or her ability to engage in work-related activities. *Chanbunmy v. Astrue*, 560 F.Supp.2d 371, 383 (E.D.Pa. 2008). A GAF rating of 45 cannot be equated with a statutory disability. *Davis v. Astrue*, 830 F.Supp.2d 32, 46 (W.D.Pa. 2011). Since the more specific findings contained in Dr. Last's examination report did not depict an individual with disabling limitations, the ALJ was entitled to rely on that report in determining that Thomas was not "disabled." R. at 17.

The ultimate question of disability is reserved for the Commissioner's determination. *Wright v. Sullivan*, 900 F.2d 675, 683 (3d Cir. 1990). For this reason, the ALJ was not required to credit Dr. Miller's conclusory assertion that Thomas had no work capacity. R. at 218. That is especially true in light of the fact that Dr. Miller had previously attributed no exertional limitations to Thomas' impairments. R. at 354. By restricting Thomas to a limited range of

"light" work activities, the ALJ carefully balanced the opinions expressed by both Dr. Miller and Dr. Brentzel. R. at 399-405, 354-355. Under these circumstances, no basis exists for setting aside the ALJ's decision.

## III. Conclusion

The Commissioner's decision denying Thomas' applications for DIB and SSI benefits is "supported by substantial evidence" and should be affirmed. 42 U.S.C. § 405(g). Accordingly, it is respectfully recommended that Thomas' motion for summary judgment (*ECF No. 10*) be denied, and that the Commissioner's motion for summary judgment (*ECF No. 13*) be granted. It is further recommended that the "final decision" of the Commissioner be affirmed. In accordance with 28 U.S.C. § 636(b)(1), the parties have fourteen days to file written objections to this report and recommendation. A party's failure to file written objections will seriously impair his or her ability to challenge this Court's legal conclusions on appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193, n. 7 (3d Cir. 2011).

Dated: October 10, 2012

_____
LISA PUPO LENIHAN
United States Magistrate Judge

cc:   All counsel of record